# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CARA FLODING, individually and as the successor Trustee of the Harry W. Floding Trust; FLODING RESORT LLC; and FLODING RESORT 2 LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TIMOTHY CHRISTIAN; SANDY CHRISTIAN; and B-KAM, LLP,<br><br>Defendants. | Civil No. 08-4233 (JRT/RLE)<br><br>**MEMORANDUM OPINION AND ORDER DENYING PRELIMINARY INJUNCTION AND LIFTING TEMPORARY RESTRAINING ORDER** |

John M. Tancabel, **TANCABEL LAW OFFICE**, 895 Osceola Avenue, St. Paul, MN 55105, for plaintiffs.

Scott Thomas Johnston, **JOHNSTON LAW OFFICE**, 510 22nd Avenue East, Suite 101, Alexandria, MN 556308, for defendants.

On July 3, 2008, plaintiffs Cora Floding, Floding Resort LLC, and Floding Resort 2 LLC moved for a Temporary Restraining Order against defendants Timothy Christian, Sandy Christian, and B-Kam LLP ("B-Kam"). Plaintiffs sought an order preventing the defendants from evicting them from a piece of real property in Alexandria, Minnesota, commonly referred to as the Floding Resort. In an Order dated August 8, 2008, this Court temporarily granted that request and scheduled a hearing for August 21, 2008, to consider whether to grant a preliminary injunction. (Docket No. 14.) Based on that

hearing and on the record, the Court now denies the Flodings' request for a preliminary injunction and lifts the Temporary Restraining Order put in place on August 8, 2008.

## BACKGROUND

As of 2003, the Flodings[1] had owned the Floding Resort in Alexandria, Minnesota for more than a century. The Flodings fell into default on a mortgage, however, and in September 2003 American National Bank began foreclosure proceedings. (*See* Defs.' Ex. C.) On December 8, 2003, the Resort was purchased by Lee Breitbach, LLP at a sheriff's sale for $1,000,000. (*See id.*)

The Resort was subject to a one-year redemption period, and the Flodings sought assistance in exercising their redemption rights from James Brown, an agent of Gateway Financial Services in Bemidji, Minnesota. In June 2004, Brown discussed the Resort with Timothy and Sandy Christian, a married couple residing in Grand Forks, North Dakota.[2] The Flodings allege that in or around October 2004, Timothy Christian indicated that he would provide mortgage financing to enable the Flodings to avoid foreclosure on the Resort. (Floding Aff. ¶18.) The Christians dispute this account,

---

[1] As noted above, the plaintiffs in this action are Cora Floding, Floding Resort LLC, and Floding Resort 2 LLC. However, the parties do not indicate that any details about the status of these entities (or any differences between them) are relevant to the instant motion. Thus, for the purposes of this Order, the Court will refer to the plaintiffs collectively as the Flodings.

[2] The Christians are part-owners of defendant B-Kam, a North Dakota limited liability partnership. As with the plaintiffs, the parties do not indicate that any details about the status of B-Kam and the two Christians (or any differences between them) are relevant to the instant motion. Thus, for the purposes of this Order, the Court will refer to the defendants collectively as the Christians.

contending that they refused to provide any financing unless they became fee simple owners of the Resort.

The Flodings allege that in November 2004, with just weeks remaining in the redemption period, they learned that the Christians had changed their minds about providing mortgage financing. (Floding Aff. ¶27.) The parties met in Grand Forks on November 29 to discuss the matter, and the Christians proposed that the Flodings sell them the Resort for $1.2 million, and that the Christians then lease the Resort back to the Flodings with an option to buy. (Floding Aff. ¶32.) The Flodings signed the necessary documents to assent to this arrangement, and the Resort was redeemed from the pending foreclosure. (Floding Aff. ¶¶37-38.)

The Flodings allege that in September 2005, they had sufficient financing to exercise their option to repurchase, but that Timothy Christian refused to attend the closing. (Floding Aff. ¶¶60-61.) Then, in October 2005, the Christians filed an unlawful detainer action against the Flodings in Minnesota state court, seeking to evict them from the Resort. (Floding Aff. ¶64.) The Christians alleged that the Flodings had failed to make the payments required under the lease agreement. In their Answer to that action, the Flodings asserted that their transaction with the Christians had created a mere equitable mortgage. (Christian Aff. Ex. F18.) The Flodings addressed this issue at length in a memorandum filed in support of their Answer, and explicitly argued that it was appropriate for the court to consider this defense in an eviction action. (Christian Aff. Ex. F18.)

Before the state court had ruled on the Christian's action – and before it had ruled on whether it was appropriate to consider the Flodings' equitable mortgage defense – the parties entered into a settlement. (Floding Aff. ¶66.) On January 11, 2006, that settlement was read into the record in a hearing before a state court judge. (Christian Aff. Ex. F19.) As part of the settlement, the parties agreed that the court would enter a judgment of eviction, but that this judgment would be stayed until October 11, 2006, nine months after the hearing. (Christian Aff. Ex. F19 at 3.) In the interim, the Flodings were given the right to remain in possession of the Resort, without an obligation to make payments. (Floding Aff. ¶67.) In exchange for this consideration, the Flodings acknowledged that:

> The Floding Resort lease is not and does not constitute an equitable mortgage, lien, or any other type [sic] security interest which would require any type of judicial or statutory proceeding, the result of which would afford them any type or form of redemption rights such as those afforded a mortgagee or contract vendee.

(Christian Aff. Ex. F19 at 7.) The court expressly confirmed this concession with the Christian's counsel in the following exchange:

> THE COURT: So it's clear today that there is no equitable mortgage –
>
> MR. CHRISTENSEN (Christians' counsel): That's correct.

(Christian Aff. Ex. F19 at 10.) Later in the hearing, the Flodings' counsel also confirmed this concession with the Flodings, in the following exchanges:

> MR. SELLNOW: Now, you and I have discussed the concept of an equitable mortgage and how that might result in B-KAM having to bring what I referred to as a foreclosure by action, go through a publication and redemption period, and it could delay this process for up to 18 months by

my estimate for them to get possession of the property, have we discussed that?

[CORA] FLODING:  Yes.

MR. SELLNOW:  And do you understand that this is a compromise that we're entering into, that essentially we've divided that 18 months in half and you're getting nine months to October 11, 2006, to come up with the money to pay them off?

[CORA] FLODING:  Yes.

\* \* \*

MR. SELLNOW:  Do you have any questions about the stipulation that we've read into the record?

[CORA] FLODING:  No.

MR. SELLNOW:  Are you willing to be bound by the terms of that?

[CORA] FLODING:  Yes.

MR. SELLNOW:  Do you understand that what we'll do is we'll request a transcript of this proceeding, and the attorneys will review it, and we will sign off on it, and the judge will sign off, and then it will be the law of this case, do you understand that?

[CORA] FLODING:  Yes.

MR. SELLNOW:  Okay.  And you're willing to have that be the law of this matter and abide by this stipulation?

[CORA] FLODING:  Yes.

(Christian Aff. Ex. F19 at 17-19.)

The parties later reviewed the transcript of the settlement, and made several changes related to the interest that would be owed if the Flodings were to repurchase the Resort.  (Christian Aff. Ex. F19.)  However, the parties made no changes impacting the

Flodings' release of their equitable mortgage claim, and both parties signed a document affirming their assent to the terms of the settlement. (Christian Aff. Ex. F19.) The court entered a final judgment of eviction in accordance with the parties' settlement on March 21, 2006. (Christian Aff. Ex. H.)

The Flodings made no payments to the Christians from the time of the settlement until October 2006. (Floding Aff. ¶68.) The Christians obtained a writ of eviction late that month, but the parties reached an agreement allowing the Flodings to temporarily remain in possession of the Resort. (Floding Aff. ¶¶69, 71.) The Flodings indicate that in December 2006, they raised the possibility of buying the Resort back from the Christians, but that the Christians ultimately refused to sell. (Floding Aff. ¶¶73-80.)

The Christians filed a second eviction action in state court in May 2008, and on July 8, 2008, a state court judge ruled that the Christians are entitled to recover the Resort. (Christian Aff. Ex. M.) The state court judge declined to consider the Flodings' equitable mortgage claim because of their apparent intent to litigate that issue in another forum, but noted that the Flodings had waived the equitable mortgage claim in the parties' earlier settlement. (*Id*. at ¶¶6-7.)

The Flodings filed this action in federal court on July 3, 2008, and now seek an injunction preventing their eviction. While the Flodings' complaint asserts claims for promissory estoppel, equitable estoppel, negligent misrepresentation, and misrepresentation, the only claim the Flodings have asserted in support of their injunction request is their equitable mortgage claim. (*See* Pls.' Mem. at 12.) As noted above, this

Court temporarily granted the Flodings' injunction request on August 8, 2008, and now considers whether to grant a preliminary injunction.

## ANALYSIS

### I. STANDARD OF REVIEW

In determining whether a party is entitled to a preliminary injunction, the Court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Eighth Circuit has recently clarified the third prong of this test, noting that "where a preliminary injunction is sought to enjoin . . . [a] government action based on presumptively reasoned democratic processes" (e.g. a state or federal statute), "courts must make a threshold finding that a party is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008).  In circumstances that do not fall under this category, such as those at issue here, courts should determine whether the plaintiff has a mere "fair chance of prevailing." *Id*. at 732. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citing 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d. ed. 1995)).  Here, the Court's analysis begins with the Flodings' prospects for success on

the merits. Failure to satisfy this factor alone may be sufficient to deny a motion for a preliminary injunction. *Cf. Rounds*, 530 F.3d at 738.

## II. SETTLEMENT

The Christians offer several arguments for why the Flodings' equitable mortgage claim cannot succeed on the merits. Included among those arguments is the contention that the Flodings settled this claim in the January 11, 2006, hearing quoted above. Because the Court finds that contention sufficient to rule on the Flodings' motion, the Court need not reach the Christians' additional arguments.

Under Minnesota law, a valid release of a legal claim is a defense to an action based on the released claim. *Sorenson v. Coast-to-Coast Stores (Cent. Org.), Inc.*, 353 N.W.2d 666, 669 (Minn. Ct. App. 1984). A release is not valid, however, "if the party executed the release under circumstances showing the release was not intended or if the party did not receive sufficient consideration." *Id*. In addition, courts assessing the validity of a release have also considered the following factors: "1) the presence or absence of legal counsel of plaintiff's choice before and at the time of settlement; 2) the language of the release itself and whether the plaintiff was permitted to change language in the release; 3) evidence of inequitable conduct by the defendant in obtaining the release; 4) the presence or absence of fraud or misrepresentation in obtaining the release; 5) the existence of economic coercion in obtaining the release; and 6) evidence that the release is against public policy." *Schmitt-Norton Ford, Inc.*, 524 F. Supp. at 1102-03 (citations omitted) (interpreting Minnesota law); *see also Karnes v. Quality Pork*

*Processors*, 532 N.W.2d 560, 562 (Minn. 1995) (applying a similar test using factors tailored to personal injury claims). In order for allegations of fraud or misrepresentation to void a settlement, those allegations must touch and concern the settlement agreement. *Sorenson*, 353 N.W.2d at 670. Finally, "[t]he party seeking to avoid a settlement has the burden of showing sufficient grounds for its vacation." *Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (Minn. 1981).

Here, the Christians argue that the Flodings' effectively released their equitable mortgage claim in the January 11, 2006, hearing. The Christians contend that the Flodings received sufficient consideration for that release, in the form of a right to remain in possession of the Resort rent-free from January to October of 2006. The Flodings indicated at oral argument that they do not dispute that they received sufficient consideration. Instead, they argue that the settlement is not effective because the state district court did not have jurisdiction to hear their equitable mortgage claim, relying on *Brown v. Grant Holding, LLC*, 394 F. Supp. 2d 1090 (D. Minn. 2005).[3]

The Court concludes that the Flodings' have failed to demonstrate a fair chance of prevailing on this issue. The passages quoted above from the January 11, 2006, hearing unambiguously demonstrate that the Flodings intended to release their equitable mortgage claim. Indeed, that intent was expressly verified on the record. In addition, as

---

[3] In their memorandum, the Flodings briefly suggest that there are ambiguities in the text of their settlement agreement. Specifically, the Flodings argue that the terms of the settlement (1) address whether the Resort *lease* should be converted to an equitable mortgage, when it should have focused that question on the *deed*, and (2) mistakenly refers to the rights of mortgagees, rather than mortgagors. However, the inquiries of the state court judge and the Flodings' counsel at the January 11, 2006, hearing were more than adequate to clarify the parties' intent.

noted above, the Flodings have conceded that they received sufficient consideration in exchange for this release.  Moreover, while the parties do not address the additional factors listed above, the Court notes that the Flodings were represented by counsel at the time of the release and had the opportunity to review and amend the settlement terms after the hearing.  No changes were made to those terms that impacted their release of their equitable mortgage claim.  Finally, while the Flodings allege various instances of unfair dealing throughout the course of their relationship with the Christians, they allege no fraud, inequitable conduct, or coercion in the formation of the 2006 settlement.  In those circumstances, at least for the purposes of this motion for a preliminary injunction, the Court finds no basis for vacating the Flodings' release of their equitable mortgage claim.

The Court adds that it finds nothing in *Brown* that supports a contrary result.  As an initial matter, *Brown* does not indicate that equitable defenses are flatly unavailable in Minnesota eviction proceedings.  Rather, *Brown* states that "Minnesota courts *have not decided* whether an equitable defense may be raised in an eviction proceeding."  394 F. Supp. 2d at 1100 (emphasis added).  Moreover, at least one Minnesota Court of Appeals decision has identified narrow circumstances where such an equitable defense would be available in an eviction proceeding.  *See Fraser v. Fraser*, 642 N.W.2d 34, 40-41 (Minn. Ct. App. 2002) (explaining that equitable defenses may be available in eviction proceedings where there were inadequate opportunities to raise them elsewhere).  Indeed, the Flodings relied heavily on *Fraser* in arguing in the 2006 eviction action that their equitable mortgage defense was available.  (Christian Aff. Ex. F18.)  In any event,

nothing in *Brown* prohibits parties from *settling* an equitable mortgage claim in an eviction proceeding, particularly where the availability of that claim is the subject of a live dispute.[4]

In summary, while the Flodings are of course free to further explore the circumstances of their settlement in discovery, at this stage of the proceedings they have not demonstrated a fair chance of succeeding on the merits. In light of that failure, the remaining *Dataphase* factors cannot tip the balance of the harms in favor of an injunction. *Cf. Rounds*, 530 F.3d at 738 n.11. Accordingly, the Flodings' motion for a preliminary injunction is denied, and this Court's temporary injunction is lifted.

### ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for a preliminary injunction is **DENIED**.

2. The Temporary Restraining Order issued by this Court on August 8, 2008 [Docket No. 14], is **LIFTED**.

DATED: September 4, 2008  
at Minneapolis, Minnesota.

s/ John R. Tunheim  
JOHN R. TUNHEIM  
United States District Judge

---

[4] The Court notes that in another section of the *Brown* decision not discussed by the Flodings, that court directly addressed the enforceability of a settlement reached in an eviction proceeding. 394 F. Supp. 2d at 1100-01 (emphasis added). There, the court deferred ruling on the enforceability question because of uncertainty over the adequacy of the consideration. *Id*. Here, as noted above, the adequacy of the consideration received by the Flodings is not disputed.